IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| TERRI SIMMONDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:09-CV-01201 |
| v. | ) |
| | ) Judge Haynes/Knowles |
| WAL-MART STORES, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Wal-Mart Stores, Inc. ("Defendant"), files this memorandum of law in support of its Motion for Summary Judgment.

## I.     INTRODUCTION

Plaintiff Terri Simmonds ("Plaintiff") initiated this action on December 21, 2009. (Docket No. 1, Complaint) and amended her Complaint on January 20, 2009. (Docket No. 5, Amended Complaint). Plaintiff alleges that Defendant violated the Family Medical Leave Act of Act ("FMLA"), 26 U.S.C. § 2601 et seq., by terminating her in retaliation for taking FMLA leave. (Docket No. 5, Amended Complaint, ¶ 8). Alternatively, Plaintiff alleges that Defendant terminated her because of her alleged disability or perceived disability in violation of both the Tennessee Disability Act ("TDA"),[1] Tenn. Code Ann. § 8-50-103, and the Americans with Disabilities Act ("ADA"),[2] 42 U.S.C. §12101. (*Id.* at ¶¶ 3, 8).

---

[1] In her Amended Complaint, Plaintiff incorrectly refers to this Act as the Tennessee Handicap Act. (Docket No. 5). Effective April 7, 2008, the legislature amended the Act changing all references to "handicap" to "disability," including changing the name of the Act. *See* 2008 Tenn. Pub. Acts. Ch. 706, §§ 3, 5.
[2] *See also* ADA Amendments Act (ADAAA), Pub. L. No. 110-325, § 4(a), 122 Stat. 3553, 3555 (2008) (codified at 42 U.S.C. § 12101) (amending Americans with Disabilities Act (ADA), § 3(2)(B), 42 U.S.C. § 12101, *et seq.* (1990)).

The uncontroverted record shows that Defendant discharged Plaintiff for a legitimate, non-discriminatory reason – she failed to return to work following an approved FMLA leave. Defendant did not engage in any unlawful conduct on any basis, and is therefore entitled to summary judgment on all of Plaintiff's claims.

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

Fed. R. Civ. P. 56(c) mandates summary judgment when the record shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Not a "disfavored procedural shortcut," summary judgment is a device "designed 'to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). It should be granted where no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). On a summary judgment motion, the court views all the evidence in the light most favorable to the non-movant. *Id.* at 255. However, when faced with a properly supported motion, the non-movant must "set forth specific facts showing that there is a genuine issue for trial" on every essential element of its case on which it will bear the burden of proof at trial. Fed. R. Civ. P. 56(d); *Celotex Corp.*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The non-movant cannot survive a summary judgment motion simply by casting "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must present "concrete evidence supporting its claims." *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

Here, even construing all facts and inferences in Plaintiff's favor, she cannot demonstrate there is a genuine issue of any material fact. Accordingly, Defendant is entitled to judgment as a

matter of law.

**B.     Defendant is entitled to Summary Judgment on Plaintiff's FMLA Retaliation Claim.**

To establish a *prima facie* case of retaliatory discharge under the FMLA, Plaintiff must show that (1) she availed herself of a protected right under the FMLA by notifying Defendant of her intent to take leave, (2) she was adversely affected by an employment decision when she was discharged, and (3) a causal connection between her exercise of a right under the FMLA and the adverse employment decision. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). Because the causal connection element encompasses the employer's intent, "the employer's motive *is* an integral part of the analysis." *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006).

If Plaintiff can make this showing, under the *McDonnell Douglas* framework, the burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's discharge. *Skrjanc*, 272 F.3d at 315. If Defendant articulates such a reason, then Plaintiff has the burden of showing that the articulated reason is in reality a pretext to mask discrimination. *Id.*

Even construing all facts and inferences in Plaintiff's favor, for the reasons set forth below, she cannot demonstrate that Defendant terminated her in retaliation for taking FMLA leave.

**1.     Plaintiff Cannot Establish a *Prima Facie* Case.**

It is undisputed that Plaintiff took FMLA leave from October 14, 2009, through November 14, 2009, and was terminated by Defendant on November 16, 2009. (SOF, ¶¶ 42,

47).³  However, Plaintiff is unable to show a causal connection between the taking of her October-November 2009 FMLA leave and her termination.  While it is undisputed that Plaintiff was terminated two (2) days *after* she was scheduled to return from her FMLA leave,⁴ temporal proximity alone is insufficient to establish circumstantial evidence of a causal connection.  *See Dixon v. Gonzales*, 481 F.3d 324, 333, 335 (6th Cir. 2007) (noting that "causation is a fact-specific inquiry and is not reducible merely to a measurement of temporal proximity"); *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006) ("Moreover, an employee cannot rely on the mere short passage of time between the filing of a workers' compensation claim and subsequent termination to prove a prima facie case of retaliation.").  Temporal proximity must be coupled with other indicia of retaliatory conduct to give rise to a finding of causal connection.  *Dixon*, 481 F.3d at 333-334.

As noted above, "the employer's motive *is* an integral part of the" causal connection element.  *Edgar*, 443 F.3d at 508.  Plaintiff cannot show that Defendant's motive in terminating her employment was based on the fact that she took FMLA leave.  Defendant had previously allowed Plaintiff to take about eight (8) weeks of FMLA leave earlier in the same year from April 1 through May 28, 2009.  (SOF, ¶¶ 22, 25).  Plaintiff admits that she was returned to her prior position following that FMLA leave.  (SOF, ¶ 26).  Moreover, Defendant had approved Plaintiff to take an extended medical leave of absence ("LOA") in 2007-2008.  (SOF, ¶ 7). During that time, Plaintiff was on a LOA for about one (1) year and was returned to her prior position following that LOA.  (SOF, ¶ 7).  The fact is that Plaintiff never requested that her

---

³ "SOF, ¶ __" refers to Defendant's Separate Statement of Undisputed Facts filed contemporaneously herewith.
⁴ Plaintiff admitted during her deposition that paragraph 7 of her Amended Complaint contains the wrong termination date and that she was not terminated "two days before she was to return from FMLA leave" as alleged in the Amended Complaint. (Pl. Depo., p. 148).

4

October –November 2009 FMLA leave be extended. (SOF, ¶ 44). She was terminated when she failed to return to work following this LOA. (SOF, ¶ 47). Defendant carried out Plaintiff's termination in accordance with Defendant's Leave of Absence (FMLA Leave) Policy ("LOA Policy"), which states:

> If you need to extend your FMLA Leave beyond the time initially requested up to 12 weeks, or 26 weeks for Military Family Care, you must request an extension as soon as possible by submitting another Request for Leave of Absence Form and a new Certification Form to Human Resources. Your continued ability to take FMLA Leave depends on your timely submission of the new Certification Form as well as your continuing eligibility for FMLA Leave.
>
> **If you do not notify Walmart that you need to extend your FMLA Leave and do not report to work, you may be deemed to have voluntarily terminated your employment from Walmart**, except where prohibited by law.

(SOF, ¶ 5).

Plaintiff testified that she "believes" she was terminated for taking FMLA leave. (SOF, ¶¶ 50-51). Plaintiff's "subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship." *Newcomb*, 222 S.W.3d at 391. There is simply no evidence establishing a causal connection between Plaintiff taking her most recent FMLA leave and her termination.

For all of the above reasons, Plaintiff cannot establish a *prima facie* case for retaliatory discharge under the FMLA, and Defendant is entitled to summary judgment on this claim.

**2. Defendant Discharged Plaintiff for a Legitimate, Non-Discriminatory Reason.**

Even assuming *arguendo* that Plaintiff could establish a *prima facie* case, Defendant had a legitimate, non-discriminatory reason for terminating her. Defendant terminated Plaintiff in accordance with its LOA Policy when she failed to return to work following her FMLA leave.

(SOF, ¶¶ 5, 47).  *See Niemiec v. H&K, Inc.*, No 94-C-553, 1995 U.S. Dist. LEXIS 20772 (E.D. Wis. Apr. 26, 1995) (finding that summary judgment is appropriate when the defendant can show that it did not terminate the plaintiff for taking medical leave but for legitimate, non-discriminatory reasons).

Defendant's legitimate, non-discriminatory reason for terminating Plaintiff has "added credibility" based on the fact that Defendant approved Plaintiff to take prior LOAs and returned her to the Assistant Manager position following each of those leaves.  Plaintiff took an extended medical leave of absence from May 11, 2007, through May 11, 2008 (one year), and was returned to her Assistant Manager position following that leave.  (SOF, ¶ 7).  Plaintiff had also taken an earlier FMLA leave in 2009 for foot surgery from April 1, 2009, through May 28, 2009 (about 8 weeks), and was again returned her to her Assistant Manager position following that leave.  (SOF, ¶¶ 22, 24-25).  The Sixth Circuit has noted that an employer's willingness to cooperate with an employee's prior FMLA leave gives "added credibility" to the employer's proffered non-discriminatory reason for discharging that same employee.  *See Skrjanc*, 272 F.3d at 315 (giving "added credibility" to the employer's legitimate, nondiscriminatory reason for discharging the employee, because the employee had taken FMLA leave a year before he was discharged and returned to work after that leave without incident).

Importantly, Plaintiff admits that she did not request an extension for her October-November 2009, FMLA leave (SOF, ¶ 44), even though she acknowledges that she received a copy of Defendant's LOA Policy, submitted extension paperwork early in the year to extend an FMLA leave, and completed FMLA training.  (SOF, ¶¶ 4, 6, 24).

### 3. Plaintiff Cannot Prove Pretext.

Plaintiff cannot show that Defendant's non-discriminatory reason for her termination –

failure to return from FMLA leave – is a pretext for discrimination. "A defendant's proffered reason cannot be proved to be a pretext "unless it is shown *both* that the reason was false, *and* that discrimination [or retaliation] was the real reason." *Harris v. Metro. Gov't of Nashville and Davidson County Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010). Moreover, "[t]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Skrjanc*, 272 F.3d at 317.

Here, the only evidence Plaintiff offers to support her allegation that Defendant terminated her in retaliation for taking FMLA leave, is her "belief" that Human Resources Manager Corinthians Williams wanted to terminate her. (SOF, ¶¶ 50-51). Plaintiff bases her "belief" solely on the fact that personnel associates had told her that Williams tried to have her terminated while she was out on a medical LOA in 2007-2008. (SOF, ¶ 51). Plaintiff admits that she was not terminated following her 2007-2008 LOA. (SOF, ¶ 7). Plaintiff also admits that Williams never made any derogatory comments to her about any of her LOAs. (SOF, ¶ 52). Williams, who has never personally met Plaintiff, personally approved all of Plaintiff's 2009 FMLA requests. (SOF, ¶¶ 9, 22, 25, 42). Plaintiff fails to present any evidence as to why Williams would want to terminate her.

Importantly, Plaintiff's termination was initiated by the Defendant's automated computer system, which sent out an e-mail notification to MHRM Williams and others managers directing that Plaintiff be terminated for failure to return to work. (SOF, ¶ 46). Plaintiff's Exit Interview indicates that her termination "was directed by GAIN and Paula Rossi." (SOF, ¶ 48). The Exit Interview also indicates that Plaintiff is eligible for re-hire. (SOF, ¶ 49). The fact that Plaintiff is eligible for re-hire undercuts her argument of retaliatory intent. *See Hall v. Wal-Mart Stores East, LP*, 637 F. Supp. 2d 588, 601 (M.D. Tenn. 2009) (noting that "Defendant's designation of

Plaintiff as 'Re-Hire Recommended' 'serves to undercut an argument for retaliatory intent.'").

Additionally, Plaintiff admits that she had a fair/friendly relationship with all three of her supervisors, and that they thought that she was a good employee. (SOF, ¶ 13). Plaintiff also admits that her supervisors never made any discriminatory comments to her. (SOF, ¶ 14).

Plaintiff fails to present any evidence that Defendant's reason for her termination is false or that retaliation was the real reason. Because Plaintiff cannot present evidence that would permit a trier of fact to find that Defendant's legitimate reason for terminating her is unworthy of credence, her FMLA retaliation claim must be dismissed and summary judgment granted for Defendant. *See Niemiec*, 1995 U.S. Dist. LEXIS 20772 at *8 (granting the employer's motion for summary judgment, because plaintiff failed to establish pretext).

## C. Defendant is entitled to Summary Judgment on Plaintiff's Claims under the ADA.

It appears that Plaintiff is claiming that Defendant both (1) failed to provide her with an accommodation required by the ADA[5] and (2) terminated her because of a disability. (Docket No. 5, Amended Complaint, ¶¶ 5-6, 8). Both of these claims are meritless.

### 1. Plaintiff Cannot Establish a Failure to Accommodate Claim.

The ADA defines discrimination to include, among other things, "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). Employers are not obligated to offer accommodations until a disability is known. Thus, the reasonable accommodation provisions of the ADA only apply if the employer knows of the disability. The responsibility to request a reasonable accommodation and to disclose information on the disability in order to

---

[5] While it is not entirely clear if Plaintiff is asserting a failure to accommodate claim under the ADA, Defendant included this claim in its summary judgment motion out of an abundance of caution.

obtain a reasonable accommodation falls squarely on the employee.[6] For the reasons explained below, Plaintiff cannot show that Defendant knew about her alleged disability or that she requested an accommodation for a disability.

In her Complaint, Plaintiff alleges that she "asked to be moved from her position as assistant manager to that of an hourly employee in order to handle the *stress* placed upon her in performing the Assistant Manager duties." (Docket No. 5, Amended Complaint, ¶ 5) (Emphasis added). She then alleges that she had to take FMLA leave because her "stress level had reached the point where she was no longer able to perform her job without the aforementioned accommodation." (*Id.* at ¶ 6). *See Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) (noting that "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA).

The undisputed facts show that Plaintiff never requested to step down to an hourly position as an accommodation for a disability (SOF, ¶ 44); rather she merely inquired about the possibility of stepping down into an hourly position due to personal stress. (SOF, ¶¶ 28-30). Plaintiff admits that she only inquired about stepping down with the Co-Manager and Store Manager and that she did not tell either one of them that she needed to step down because of any type of disability. (SOF, ¶ 32). In her deposition, Plaintiff stated the following:

> Q. Did you mention that you wanted to step down because you had a disability?
>
> A. I didn't say specifically disability, no.

---

[6] *See EEOC v. Chevron Phillips Chemical Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (noting that "the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations"); *Rask v. Fresenius Med. Care North America*, 509 F.3d 466, 470 (8th Cir. 2007) (noting that where "the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee to specifically identify the disability and resulting limitations"); *Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1334 (M.D. Ala 1998) (stating that "[n]otice by the employee is needed in an ADA case . . . in large

9

> Q. So you didn't mention your disability at that time?
>
> A. No.

(SOF, ¶ 31). Plaintiff also admits that she never submitted a Reasonable Accommodation Request Form. (SOF, ¶ 33).

Plaintiff's failure to disclose information about her alleged disability in order to obtain a reasonable accommodation prevents her from claiming that Defendant violated the ADA by failing to provide her with a reasonable accommodation. Defendant did not "deny" any request for an accommodation. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 929 (n.3) (7th Cir. 2001) (noting that defendant could not be held liable for failing to accommodate plaintiff because "there is no admissible evidence" that defendant knew of plaintiff's alleged disability).

Moreover, Defendant explained to Plaintiff that pursuant to Company policy, she could step down into an hourly position if she were willing to transfer to another store. (SOF, ¶ 34). Plaintiff went out on her FMLA leave shortly after inquiring about stepping down and never returned to work. (SOF, ¶ 35).

As a matter of law, Plaintiff cannot establish a failure to accommodate claim under the ADA. Defendant should be granted summary judgment on this claim.

### 2. Plaintiff Cannot Establish a Claim of Disability Discrimination under the ADA.

The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, Plaintiff must establish that (1) she is "disabled" within the meaning of the ADA;[7] (2) she is "otherwise qualified" to perform the

---

part because without it the employer might not ever know that the employee suffers from a disability").
[7] A person is "disabled" for the purposes of the ADA if she (1) has a physical or mental impairment that

essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of the disability. *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996); *Roberson v. Cendant Travel Servs., Inc.*, 252 F. Supp. 2d 573, 581 (M.D. Tenn. 2002).[8]

If Plaintiff establishes a *prima facie* case, Defendant must articulate a non-discriminatory legitimate reason for its action. *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 310 (6th Cir. 2000), *cert. denied* 533 U.S. 951 (2001). If Defendant meets that burden, then Plaintiff must show that the proffered reason is but a pretext for discrimination. *Id.*

### a. Plaintiff Cannot Establish a *Prima Facie* Case.

Whether Plaintiff has the requisite disability to make out an ADA claim does not have to be decided,[9] because she cannot meet the other elements of an ADA claim. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff herself admits that she could no longer perform the essential functions of the Assistant Manager position at the time she went out on FMLA leave in October of 2009. (Docket No. 5, Amended Complaint, ¶ 5). Moreover, as of the date of Plaintiff's deposition on July 30, 2010, Plaintiff's doctor had still not released her to return to work following her October–November 2009 FMLA leave. (SOF, ¶ 54). This Court

---

substantially limits one or more of her major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001); 42 U.S.C. § 12102(2).

[8] *Rev'd on other grounds*, 534 U.S. 184 (2002).

[9] It is undisputed that Plaintiff has some type of impairment (*i.e.*, anxiety disorder) that limits her ability to work and drive an automobile. (SOF, ¶ 36). In regard to Plaintiff's allegation that Defendant "perceived" her to be disabled (Docket No. 5, Amended Complaint, ¶ 8), the unrebutted proof shows that Defendant did not perceive Plaintiff to be disabled. Plaintiff's own testimony refutes her allegation, as she admits that all of her supervisors thought she was a good employee who carried out her job duties.

has found that when a plaintiff has still not been released to work, she is not "qualified" under the ADA. *Pagel v. Premier Mfg. Support Servs., Inc.*, No. 1:04-00084, 2005 U.S. Dist. LEXIS 38029, at *26-27 (M. D. Tenn. July 21, 2005) (citing *Roberson*, 252 F. Supp. 2d at 582).

Additionally, Plaintiff cannot show that she was discharged "because of" an alleged disability. Contrary to Plaintiff's allegations, Defendant did not discriminatorily discharge Plaintiff in violation of the ADA. As previously explained, Defendant terminated Plaintiff in accordance with its LOA Policy, when she failed to return to work following her FMLA leave. Since Plaintiff is unable to show that she was terminated from her job "because of" an alleged disability, she cannot establish a *prima facie* case of discrimination under the ADA. Therefore, summary judgment for Defendant on this claim is appropriate. *See Gribcheck v. U.S. Postal Serv.*, 181 F.3d 101 (6th Cir. 1999) (affirming summary judgment for defendant because plaintiff failed to show that he was terminated solely because of his disability); *Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1181-1182 (6th Cir. 1993) (affirming summary judgment for defendant because plaintiff failed to make out a *prima facie* case that the hospital suspended him solely on the basis of his handicap); *Rogers v. CH2M Hill, Inc.*, 18 F. Supp. 2d 1328, 1342 (M.D. Ala. 1998) (granting summary judgment in favor of the defendant because the plaintiff failed to prove "causation" - that he was terminated because of his disability).

### b. Defendant Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff.

Even assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination under the ADA, Defendant had a legitimate, non-discriminatory reason for terminating her employment. As previously explained, Defendant merely followed its

---

(SOF, ¶¶ 13, 15-16). Plaintiff also admits that she did not discuss her alleged disability with her supervisors. (SOF, ¶¶ 31-32).

established LOA Policy when it terminated Plaintiff for failing to return from her FMLA leave. *See supra* pp. 6-7. Defendant's LOA Policy specifically provides, "[i]f you do not notify Walmart that you need to extend your FMLA Leave and do not report to work, you may be deemed to have voluntarily terminated your employment from Walmart." (SOF, ¶ 5). It is undisputed that Plaintiff did not request an extension for her October–November 2009 FMLA leave and did not report to work on November 14, 2009, when her approved FMLA leave expired. (SOF, ¶¶ 44-45). Even if she had, Plaintiff would have only been entitled to three (3) more days of FMLA leave. (SOF, ¶ 21). *See Roberson*, 252 F. Supp. 2d at 582 (finding that "if the employee never requests to return to work, for an extension of leave, or for some kind of accommodation, the employer does not violate the ADA by terminating her.").

        **c.**    **Plaintiff Cannot Prove Pretext.**

For the same reasons previously discussed, nothing in the record permits a reasonable inference that Defendant's reason for terminating Plaintiff's employment was a pretext for disability discrimination. *See supra* pp. 7-8. Defendant clearly terminated Plaintiff because she failed to return from her FMLA leave, and not because of her alleged disability.

For all of the above reasons, Defendant is entitled to summary judgment on Plaintiff's claim of disability discrimination under the ADA.

**D.**    **Defendant is entitled to Summary Judgment on Plaintiff's Disability Claim under the Tennessee Disability Act.**

The Tennessee Disability Act ("TDA") prohibits private employers from discriminating against employees "based *solely* upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved." Tenn. Code Ann. § 8-50-103(a) (emphasis added). As a result of this specific language of the TDA, there is no

obligation to provide a reasonable accommodation under Tennessee state law. *See Hall*, 637 F. Supp. 2d at 603 (stating "[a]s a matter of law, an employer is not required to provide a reasonable accommodation under the THA"); *Roberson*, 252 F. Supp. 2d at 583 ("The [TDA] elements are very similar to those of the ADA, but do not include a 'reasonable accommodation' component"). Thus, any accommodation claim alleged by Plaintiff under the TDA fails as a matter of law.

In order for Plaintiff to prove a claim of disability discrimination under the TDA, she must show that she: (1) was qualified for the position; (2) was disabled; and (3) suffered an adverse employment action because of her disability (*i.e.*, causation). *Hall*, 637 F. Supp. 2d at 603. The same analysis above concerning the ADA applies equally to Plaintiff's TDA claim. Plaintiff has not alleged sufficient facts to prove that Defendant terminated her *because of* any alleged disability. Therefore, Defendant is entitled to summary judgment on Plaintiff's TDA claim.

## IV. CONCLUSION

For all the foregoing reasons, the Court should enter summary judgment in favor of Defendant, dismissing Plaintiff's FMLA, ADA, and TDA claims, and award any other relief for which Defendant may be entitled.

Respectfully submitted,

Lawrence & Russell, PLC

By: s/ Julie Y. McLaughlin
John M. Russell
Julie Y. McLaughlin
5178 Wheelis Drive
Memphis, TN  38117
Telephone:  901-844-4433
Fax: 901-844-4435
E-mail:  johnr@lawrencerussell.com

juliem@lawrencerussell.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 29, 2010, a true and correct copy of the foregoing was served via CM/EMF filing upon the attorneys of record.

                                      s/ Julie Y. McLaughlin